**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| BENTLEY FIELDS,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION,<br><br>Defendant. | : | Case No. 3:19-cv-19<br><br>District Judge Thomas M. Rose<br>Magistrate Judge Sharon L. Ovington |

## REPORT AND RECOMMENDATIONS[1]

## I. Introduction

Plaintiff Bentley Fields applied for period of disability, Disability Insurance Benefits, and Supplemental Security Income on September 21, 2012, asserting that he could no longer work a substantial paid job. After a hearing, Administrative Law Judge (ALJ) Gregory G. Kenyon concluded that he was not eligible for benefits because he is not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review, and he brought a previous case in this Court. Upon a joint stipulation of the parties, the Court remanded the case. *Fields v. Comm'r of Soc. Sec.*, 3:16-cv270, Doc. #13 (S.D. Ohio Apr. 19, 2017).

Upon remand, Plaintiff achieved partial success. ALJ Kenyon found that he was not under a disability prior to January 1, 2015 but became disabled on that date.

[1] Attached is a NOTICE to the parties regarding objections to this Report and Recommendations.

However, because Plaintiff was not disabled when he had insured status, his application for period of disability and disability insurance benefits was denied. Plaintiff brings this case challenging the Social Security Administration's partial denial of his applications.

The case is before the Court upon Plaintiff's Statement of Errors (Doc. #7), the Commissioner's Memorandum in Opposition (Doc. #10), and the administrative record (Doc. #s 12-13).

Plaintiff seeks a remand of this case for payment of benefits or, at a minimum, for further proceedings. The Commissioner asks the Court to affirm ALJ Kenyon's decision.

## II. Background

Plaintiff asserts that he has been under a "disability" since June 30, 2009. He was Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c). He has a high school education. *See id.* §§ 404.1564(b)(4), 416.964(b)(4).[2]

The evidence of record is sufficiently summarized in the ALJ's decision (Doc. #13, *PageID* #s 1237-65); Plaintiff's Statement of Errors (Doc. #7); and the Commissioner's Memorandum in Opposition (Doc. #10). Rather than repeat these summaries, the pertinent evidence will be discussed when addressing the parties' arguments.

## III. Standard of Review

The Social Security Administration provides Disability Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other

[2] The remaining citations will identify the pertinent Disability Insurance Benefits Regulations with full knowledge of the corresponding Supplemental Security Income Regulations.

eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 423(a)(1), 1382(a). The term "disability"—as defined by the Social Security Act—has specialized meaning of limited scope. It encompasses "any medically determinable physical or mental impairment" that precludes an applicant from performing a significant paid job—i.e., "substantial gainful activity," in Social Security lexicon. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); *see Bowen,* 476 U.S. at 469-70.

Judicial review of an ALJ's non-disability decision proceeds along two lines: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see Bowen v. Comm'r of Soc. Sec*., 478 F.3d 742, 745-46 (6th Cir. 2007). Review for substantial evidence is not driven by whether the Court agrees or disagrees with the ALJ's factual findings or by whether the administrative record contains evidence contrary to those factual findings. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Instead, the ALJ's factual findings are upheld if the substantial-evidence standard is met—that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'" *Blakley*, 581 F.3d at 407 (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance . . . ." *Rogers*, 486 F.3d at 241 (citations and internal quotation marks omitted); *see Gentry*, 741 F.3d at 722.

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence

supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746. "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746, and citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## IV. The ALJ's Decision

As noted previously, it fell to ALJ Kenyon to evaluate the evidence connected to Plaintiff's applications for benefits. He did so by considering each of the five sequential steps set forth in the Social Security Regulations. *See* 20 C.F.R. § 404.1520. He reached the following main conclusions:

Step 1: Plaintiff has not engaged in substantial gainful employment since June 30, 2009.

Step 2: He has the severe impairments of degenerative disc disease involving the cervical spine, history of migraine (versus tension) headaches, degenerative joint disease of the left shoulder, obesity, type II diabetes mellitus, syncopal episodes of undetermined etiology, depressive disorder, and borderline intellectual functioning. Beginning January 1, 2015, he also has bilateral carpal tunnel syndrome/trigger finger.

Step 3: He does not have an impairment or combination of impairments that meets or equals the severity of one in the Commissioner's Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4: Prior to January 1, 2015, his residual functional capacity, or the most he could do despite his impairments, *see Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002), consisted of "light work … subject to the following additional limitations: (1) no more than occasional crouching, crawling, kneeling, or stooping; (2) no more

> than occasional balancing; (3) no more than occasional climbing of ramps or stairs; (4) no climbing ladders, ropes, or scaffolds; (5) no exposure to hazards such as unprotected heights or dangerous machinery; (6) no more than occasional overhead reaching; (7) only indoor work; (8) no concentrated exposure to extreme heat; (9) no operation of automotive equipment; (10) limited to performing unskilled, simple, repetitive tasks; (11) no more than occasional contact with co-workers, supervisors, and the general public; (12) no fast-paced production work or jobs involving strict production quotas; (13) limited to performing jobs in a relatively static work environment in which there is very little, if any, change in job duties or work routine from one day to the next; (14) limited to performing jobs which require only first-grade reading skills and fourth-grade mathematics skills."
>
> "Commencing January 1, 2015, the claimant had the residual functional capacity to perform light work … subject to the same additional limitations described [above] plus: no more than occasional use of the hands for handling and fingering."

Step 4: He is unable to perform any of his past relevant work.

Step 5: Prior to January 1, 2015, he could perform a significant number of jobs that exist in the national economy.

> Beginning January 1, 2015, there were no longer jobs that existed in significant numbers in the national economy that he could perform.

(Doc. #13, *PageID* #s 1237-65). These main findings led the ALJ to ultimately conclude that Plaintiff was not under a benefits-qualifying disability prior to January 1, 2015 but became disabled on that date. *Id.* at 1264.

## V. <u>Discussion</u>

Plaintiff contends that the ALJ failed to adequately weigh the opinions of examining psychologists Andrea Johnson, Psy.D., and Taylor Groneck, Psy.D., and erred in his assessment of Plaintiff's mental residual functional capacity. The Commissioner maintains that substantial evidence supports the ALJ's decision.

The Regulations require an ALJ to consider and evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(b). In deciding what weight to assign an opinion, an ALJ must consider the following factors: examining relationship; treatment relationship; supportability; consistency; specialization; and other factors. *Id.* at (c).

Dr. Johnson evaluated Plaintiff in March 2012. (Doc. #12, *PageID* #s 470-75). She diagnosed depressive disorder not otherwise specified and learning disorder not otherwise specified. She opined that Plaintiff's intellectual capabilities were consistent with functioning in the low-average range, and he could apply instructions within that range. He was able to understand and follow directions during the evaluation and performed below average on memory/recall tasks. He "is likely to have some difficulties with job related tasks due to learning difficulties." *Id.* at 474. Plaintiff "presented as fleetingly able to concentrate on questions and tasks." *Id.* Although he reported no history of difficulty in maintaining adequate pace at past jobs, Dr. Johnson opined that he may show work pace slower to that of his work peers on tasks requiring rapid timed performance. Further, he "is likely to show a pattern of periods of time away from work due to mental health issues." *Id.*

Plaintiff reported that he had good relationships with his family but had a history of interpersonal problems with co-workers and supervisors. Dr. Johnson opined that he "is somewhat likely to respond appropriately to coworkers in a work setting." *Id.* Additionally, "Based on his self reported history, the claimant is somewhat able to respond appropriately to work stressors and situations." *Id.* He "is currently

experiencing some stressors, and does appear to have adequate social supports in place to effectively cope with additional stressors." *Id.*

ALJ Kenyon assigned Dr. Johnson's opinion "great weight." (Doc. #13, *PageID* #1245). He recognized that Dr. Johnson was an examining psychologist. *See* 20 C.F.R. § 404.1527(c)(1) ("Generally, we give more weight to the medical opinion of a source who has examined you than to the medical opinion of a medical source who has not examined you."); 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). After providing a detailed summary of Dr. Johnson's opinions, the ALJ found that her opinions were consistent with other evidence in the record and Plaintiff's (lack of) mental-health treatment history. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). For example, the ALJ found that Dr. Johnson's findings are consistent with Plaintiff's "actual day-to-day functioning."

Plaintiff argues that the ALJ erred in reaching this conclusion by overstating his daily functioning. For instance, the ALJ noted that Plaintiff helps to maintain a household. But Plaintiff insists that only performs limited housework. And although he attends to his own personal care, his wife, mother, or father repeatedly remind him to take care of his personal hygiene, take his medication, or attend medical appointments. The ALJ also observed that he performs part-time seasonal work. Plaintiff emphasizes that his wife helps customers because he has a hard time getting along with people, and his

wife handles all of the money transactions because he is not able to. Further, although Plaintiff has a driver's license, his driver's test had to be read to him. In sum, Plaintiff asserts, while he can perform many daily activities, he is not able to do so without support and accommodations.

The ALJ did not exaggerate Plaintiff's daily functioning; he relied on Plaintiff's reports to Dr. Johnson and Dr. Groneck. For instance, Dr. Johnson noted that Plaintiff performs all necessary household and outdoor chores. (Doc. #12, *PageID* #472). Further, Plaintiff told Dr. Groneck that he makes sandwiches for himself (but does not otherwise cook), is able to do his own laundry, and performs light household chores including helping his mom "pick up." *Id.* at 606. Turning to personal care, although Dr. Groneck did report that Plaintiff had "body odor," she did not provide any further explanation. *Id.* Given that she also noted he is adequately able to attend his personal care, his body odor alone does not establish that he is not able to handle his own personal care. Similarly, Dr. Johnson indicated that Plaintiff's grooming and hygiene were adequate. *Id.* at 472. Further, Plaintiff reported to Dr. Groneck that he is able to take his medications without reminders. *Id.* at 606. The ALJ correctly acknowledged that he only works part time. And regardless of how Plaintiff took his driver's test, as the ALJ explicitly stated, Plaintiff has "sufficient mental acuity to operate a motor vehicle." (Doc. #13, *PageID* #1247).

Plaintiff asserts that the ALJ failed to address all of Dr. Johnson's opinions despite assigning her opinion "great weight." Specifically, the ALJ did not address Dr. Johnson's opinion that Plaintiff would likely have some difficulties with job-related tasks

due to learning difficulties; he "presented as fleetingly able to concentrate on questions and tasks"; he was "likely to show a pattern of periods of time away from work due to mental health issues"; and he was "somewhat likely to respond appropriately to coworkers in a work setting."[3]

Dr. Johnson opined, as Plaintiff correctly recognized, that he is likely to have some difficulties with job-related tasks due to learning difficulties. However, Dr. Johnson also opined—and the ALJ recognized—that Plaintiff is able apply instructions requiring low average intellectual functioning. (Doc. #12, *PageID* #474). The ALJ's residual functional capacity assessment reasonably accounts for this by limiting Plaintiff to unskilled, simple, repetitive tasks and limiting him to performing jobs which require only first-grade reading skills and fourth-grade mathematics skills.

The ALJ did not specifically mention that Dr. Johnson opined that Plaintiff presented as fleetingly able to concentrate on questions and tasks. However, he accounted for Plaintiff's concentration deficits in his residual functional capacity assessment by limiting Plaintiff to performing unskilled, simple, repetitive tasks; no fast-paced production work or jobs involving strict production quotas; limited to performing jobs in a relatively static work environment in which there is very little, if any, change in job duties or work routine from one day to the next.

[3] Plaintiff also asserts that the ALJ did not acknowledge that Plaintiff reported to Dr. Johnson that in the past his cognitive deficits have gotten in the way with jobs, paperwork, and appointments. However, this was merely Plaintiff's report to Dr. Johnson; it is not Dr. Johnson's opinion.

The ALJ recognized that Dr. Johnson found that Plaintiff was somewhat likely to respond appropriately to co-workers in a work setting. And, the ALJ reasonably limited Plaintiff to no more than occasional contact with co-workers, supervisors, and the general public.

The ALJ specifically acknowledged Dr. Johnson ‘s finding that Plaintiff was likely to show a pattern of periods of time away from work due to mental health issues. (Doc. #13, *PageID* #1245). He did not, however, explain how he considered it when assessing Plaintiff's residual functional capacity. Although the ALJ should likely have addressed this opinion specifically, given that Dr. Johnson did not provide any further explanation of what she meant by "a pattern of periods of time," it was not unreasonable for the ALJ to omit this limitation his residual functional capacity assessment. Furthermore, later in his decision, the ALJ opinions points out that terms such as "is likely to…" are speculative. *Id.* at 1247.

In sum, ALJ Kenyon ALJ applied the correct legal criteria to Dr. Johnson's opinion, and substantial evidence supports her reasons for assigning it "great weight."

Dr. Groneck evaluated Plaintiff in March 2013. (Doc. #12, *PageID* #s 604-09). He diagnosed depressive disorder not otherwise specified and learning disorder not otherwise specified. Dr. Groneck opined that Plaintiff's intellectual capabilities were consistent with functioning in the extremely low to borderline range. She noted that Plaintiff reported a history of poor grades in special education classes and a history of learning problems at work. Specifically, at work, he required additional assistance, often forgot what was asked of him, and had to be told multiple times. During the evaluation,

his short-term memory and working memory were poor. And, he was unable to read consent forms. Dr. Groneck found that "He can understand simple and repetitive tasks but may require patient and frequent explanations. Instructions would typically need to be repeated multiple times to ensure understanding." *Id.* at 609.

Dr. Groneck noted that Plaintiff's ability to focus and concentrate were "marginally adequate," and he did not appear distracted by office sounds. *Id.* She opined, "Due to probable limited cognitive abilities, it is likely that he will work at a slower pace. He may be slow to orient to tasks." *Id.* Although Plaintiff cooperated and was pleasant during the interview, he reported withdrawal from social relationships. Dr. Groneck found that he "may have some difficulty initiating and maintaining social relationships in the workplace." *Id.* Further, Plaintiff appeared to "lack adaptive coping skills for stress." And, he may have some difficulty tolerating even minor changes in his work routine. He would likely require excessive support to adjust to a new or changed task." *Id.*

Plaintiff asserts that the ALJ's evaluation of Dr. Groneck's opinions was insufficient and not an accurate representation of the record.

The ALJ assigned Dr. Groneck's opinions "limited weight." (Doc. #13, *PageID* #1247). He did not completely dismiss her opinion. Instead, the ALJ rejected the extent of limitation opined by Dr. Groneck, concluding that Dr. Johnson's more moderate restrictions were supported by the record. The ALJ found that Dr. Groneck's opinions that Plaintiff had a limited ability to adapt, understand, and follow instructions were inconsistent with most of the relevant evidence of record and appeared to have been

based largely, if not entirely, on an uncritical acceptance of Plaintiff's own statements and subjective complaints.

Plaintiff asserts that it is "plainly untrue" Dr. Groneck based his opinion on Plaintiff's subjective complaints. Instead, Plaintiff insists, his opinion is supported by his clinical interview and mental status examination findings. (Doc. #7, *PageID* #53). Although Plaintiff is correct that Dr. Groneck's mental status examination findings support some of his opinions, his report also shows that he relied on Plaintiff's statements. For instance, "He reported a history of learning problems at work. He reportedly required additional assistance. He often forgot what was asked of him and had to be told multiple times." (Doc. #12, *PageID* #s 606, 609).

The ALJ also discounted Dr. Groneck's opinion because the "purported deficits in intellectual functioning suggested by Dr. Groneck appear rather spurious considering the fact that the claimant performed semi-skilled work activity in the relevant past." (Doc. #13, *PageID* #1247). Plaintiff asserts that this is not a reasonable conclusion. (Doc. #7, *PageID* #55). He points out that the Appeals Council specifically pointed out that because his alleged onset date is June 30, 2009 and he has not worked since that date, his "past abilities to perform a job does not bear on the claimant's present residual functional capacity." (Doc. #13, *PageID* #1297).

Plaintiff appears to have misunderstood the ALJ's conclusion. The ALJ is not suggesting that Plaintiff is able to work because he was able to work in the past. Instead, the ALJ found that Plaintiff's ability to perform semi-skilled work in the past is not consistent with Dr. Groneck's opinion that Plaintiff's intellectual functioning is in the

extremely low to borderline range. Given that there is no evidence showing a decline in intellectual functioning, the ALJ's conclusion is reasonable.

Although Plaintiff maintains that ALJ Kenyon should have weighed the opinion evidence differently, substantial evidence supports his consideration of these opinions. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). The substantial evidence standard presupposes that there is a zone of choice within which the decision maker can go either way, without interference by the courts. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009). The ALJ's explanation for why she found Dr. Groneck's opinion merited limited weight was within the zone of reasonable choices. She likewise provided a reasonable explanation, supported by substantial evidence, for how and why she weighed the opinions of Dr. Johnson. Accordingly, Plaintiff's challenges to the ALJ's review of the medical source opinions lack merit.

Plaintiff contends that the ALJ erred further: "In support of his finding that Mr. Fields retained the [mental residual functional capacity] to perform competitive work, the ALJ mischaracterizes the record." (Doc. #7, *PageID* #56). Plaintiff points to the ALJ's conclusions that his level of adaptive functioning is greater than that of an intellectually disabled individual and that there is a lack of compelling evidence supporting limited academic skills. Further, the ALJ improperly relied on evidence that Plaintiff could manage his own finances and live independently. According to Plaintiff, there is compelling evidence showing his intellectual disability as well as his inability to handle his finances and live independently.

However, as Plaintiff correctly points out that, despite finding a lack of compelling evidence, the ALJ limited Plaintiff to performing work with first-grade reading skills and fourth-grade mathematics skills. Thus, whether the ALJ found the evidence compelling, he nevertheless accounted for any limitations in his mental residual functional capacity assessment.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The ALJ's partial non-disability decision be affirmed; and

2. The case be terminated on the Court's docket.

July 22, 2020

*s/Sharon L. Ovington*
Sharon L. Ovington
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendations. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).